RECEIVED

JUN 2 4 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | |
|---|---|
| **LUCY SIKES** | **CIVIL ACTION NO. 04-2439** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **PROGRESSIVE BANK, ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

### OPINION

Pending before this Court is an Appeal [Doc. No. 1], brought by Appellant Lucy Sikes, Trustee on behalf of Abby Lines, Inc. ("Trustee"), from an Order rendered on November 2, 2004, by Judge Henley A. Hunter of the United States Bankruptcy Court for the Western District of Louisiana ("Bankruptcy Court"), in an adversary proceeding captioned *Abby Lines, Inc., et al. v. Progressive Bank, et al.*, Adversary No. 03-3034. Appellees Progressive Bank, Progressive Bancorp, Inc., and George Cummings, III(collectively, "Progressive Defendants") have filed a brief in opposition, as has Appellee Joe Doughty. For the following reasons, the Bankruptcy Court's Judgment is AFFIRMED, and the Trustee's Appeal [Doc. No. 1] is DENIED.

### I. FACTS AND PROCEDURAL HISTORY

This controversy arises from a factoring and security agreement ("Factoring Agreement"), entered into by Abby Lines, Inc. d/b/a Ole Time Express ("Abby Lines" or "Debtor") and Progressive Bank ("Progressive") on December 23, 1998. Pursuant to the Factoring Agreement, Progressive would purchase, or "factor," accounts receivable from Abby Lines at their face value, less a service charge, and, in exchange, Abby Lines's customers would make payments on these accounts directly to Progressive. The Factoring Agreement also provided that Progressive would retain a designated portion of the sums payable to Abby Lines in a separate reserve account, from which factored accounts that were ninety days past due would be deducted.

On June 26, 2002, the Internal Revenue Service ("IRS") filed a federal withholding tax lien of more than three million dollars against Abby Lines. The existence of this tax lien was not disclosed to Progressive.

In October and November, 2002, there were several significant disputes between Abby Lines and Progressive about how money was being advanced and collected on the factored accounts. For example, Progressive asserted that in October, 2002, it advanced approximately one million dollars to Abby Lines for the purchases of invoices that were either duplicates of other invoices previously purchased or that were never produced by Abby Lines. Then, in November, 2002, Abby Lines accused Progressive of accepting cash payments from its customers for certain invoices and then collecting money from Abby Lines's reserve account to cover these same invoices. These issues were discussed by Abby Lines and Progressive at several meetings, but without resolution.[1] In early November, 2002, shortly after discovering the missing and duplicate invoices, Progressive terminated two of its employees who had been directly responsible for the Abby Lines account. Defendant Doughty was one of the employees terminated.

On December 3, 2002, Progressive discovered the tax lien against Abby Lines. The following day, Progressive notified Abby Lines by letter that Abby Lines was in default of the Factoring Agreement. Progressive stated in the letter that it would no longer purchase accounts from Abby Lines.

Eight days later, on December 12, 2002, Abby Lines filed a Chapter 11 Voluntary Petition for bankruptcy relief, Bankruptcy Case No. 02-32537. On this same date, Abby Lines filed an Emergency Motion for Authority to Consummate and Perform Account Receivable Purchase and

---

[1]Progressive concluded that it was owed approximately $1.8 million by Abby Lines. In contrast, Abby Lines argued that Progressive owed it $1.2 million. As of the August, 2004 evidentiary hearings before the bankruptcy Court, discussed *infra*, there was still no conclusion as to what balances, if any, were due to Progressive by Abby Lines, or vice versa.

Security Agreement and Consummate and Perform Fuel Line Agreement ("Emergency Motion"). The purpose of this Emergency Motion was to enable Abby Lines to enter into a new factoring agreement with Transportation Alliance Bank ("TAB") in order to continue operations. An expedited hearing on the Emergency Motion was set for December 18, 2002.

On December 17, 2002, Progressive filed its Response to Debtor's Emergency Motion. In its response, Progressive did not object to the post-petition factoring, but did request that if such post-petition factoring was approved, that Abby Lines be required to segregate, account for, and turn over all of Progressive's cash collateral and repay Progressive for all pre-petition accounts purchased and all cash advanced.

On December 18, 2002, a hearing on the Emergency Motion was held in the Bankruptcy Court. Present at the hearing were Eddie Simon and Cindy Simon ("the Simons"), the sole shareholders of Abby Lines, along with their attorney, Malcolm DeCelle; George Cummings, president of Progressive Bank, along with Progressive's counsel, Frank Martin; and Empire Trucking, along with its attorneys. The hearing was adjourned for a pretrial conference in chambers, during which the parties advised Judge Hunter that they would attempt to reach an agreement to allow the post-petition factoring between Abby Lines and TAB. Tim Valdez, an officer of TAB, participated in the conference by telephone. Additionally, Judge Hunter contacted the United States Trustee and the United States Attorney representing the IRS, to advise them of the negotiations.

After several hours of negotiations at the pretrial conference, the parties reached an agreement. The parties stipulated on the record in open court that, subject to the parties' right "to think through the details, and "subject to the entry of the Order," they had agreed upon the following: (1) Progressive would release $250,000 of accounts that were subject to Progressive's security interest, but had not yet been purchased by Progressive; (2) Abby Lines's CPA would be

3

given access to Progressive's records to try to resolve any disputes regarding the missing and duplicate accounts and the amounts owed thereunder; (3) Abby Lines and the Simons would assist Progressive with the collection of the accounts and help Progressive identify the missing and duplicate accounts; and (4) "the [D]ebtor will not assert any claims against Progressive Bank. [The parties] don't agree at this point on what the dollar amount is that is owed and will certainly reserve that dispute but, beyond that, no claims will be asserted in the nature of lender liability claims." [2]

Between December 18, 2002, and December 24, 2002, counsel for Abby Lines, Progressive, TAB, and Empire Trucking exchanged drafts and revisions of the proposed order which was to finalize their agreement. By the time the proposed order was finally agreed to and signed by all parties on December 24, 2002 ("Initial Agreed Order"), the stipulations had changed significantly as compared to those submitted in court on December 18, 2002. Most significant was the change in the release language, which in the Initial Agreed Order reads:

> Debtor, for itself and assigns, including any subsequently appointed Trustee, agrees that it will assert no claims against [Progressive] Bank or Bank's employees or directors, pursuant to the bankruptcy laws or other applicable law, relating to the actions or omissions of [Progressive] Bank and Bank's employees and directors prior to the petition date, and Debtor specifically relinquishes, releases and discharges any such claims.

In Judge Hunter's absence, the signature of another judge of the Bankruptcy Court, Judge Stephen V. Calloway, was affixed to the December 24, 2002 Initial Agreed Order.

On December 27, 2002, the Initial Agreed Order was amended to change the time of the final hearing from 9:00 a.m. to the correct time of 9:30 a.m, but no other language from the Initial Agreed Order was changed. As discussed more thoroughly below, the amended December 27, 2002 Order ("the Agreed Order") was not signed by any judge, but was only time-stamped with the new date.

---

[2]There were also several related stipulations involving Abby Lines and Empire Trucking, but they are not relevant to this Appeal.

A hearing on the Emergency Motion and for final approval of the Agreed Order was held on January 15, 2003, during which the Bankruptcy Court granted conditional final approval of the Agreed Order. However, due to deficiencies in the noticing of the hearing on the Agreed Order, the Bankruptcy Court directed the parties to re-notice the proposed disposition of the matter for April 2, 2003, on an "if and only if basis," meaning that if there were no objections to the entry of the Agreed Order by March 6, 2003, no further hearing would be needed, and the Agreed Order would be deemed finally approved. Notice was sent to all required parties. This notice included a copy of the Agreed Order and the proposed stipulations, as well as language indicating that if no objections were filed by March 6, 2003, the Agreed Order would be made final. No objections were filed.

On March 12, 2003, the Bankruptcy Court signed an Order converting Abby Lines's Chapter 11 bankruptcy to one under Chapter 7. The Bankruptcy Court also ordered Abby Lines to turn over all records and property to the Chapter 7 Trustee.

When the final Agreed Order was presented on April 1, 2003, the Bankruptcy Judge handwrote on the bottom of the Agreed Order that final approval was "denied as filed. Any further relief to be noticed to the Trustee." The Bankruptcy Court later explained that this denial of final approval had been "based on the circumstances of the recent conversion" to Chapter 7, such that "the business activities of the former debtors-in-possession effectively ended when the financial package contemplated by the December 2002 Order did not materialize."

On July 16, 2003, Abby Lines and the Simons filed suit in Louisiana state court, Fourth Judicial District for the Parish of Ouachita, against Progressive, Progressive Bancorp, Inc., Cummings (as president and loan officer of Progressive) and Doughty (as former president and loan officer of Progressive's Winnsboro branch) (collectively, "Defendants"). Abby Lines and the Simons sought damages for fraud, intentional infliction of emotional distress, negligence, detrimental reliance and promissory estoppel, breach of contract, bad faith breach of contract,

breach of fiduciary duty, and libel and slander. On August 11, 2003, Defendants removed the case to this Court, where it was referred to the Bankruptcy Court, Adversary No. 03-3034. On August 15, 2003, Lucy Sikes,[3] acting as Chapter 7 Trustee, was added to the case as an interested party.

On August 29, 2003, the Simons filed a Motion to Abstain and Remand. On September 30, 2003, and on October 1, 2003, the Progressive Defendants and Defendant Doughty, respectively, each filed a Motion to Dismiss the Adversary Proceeding. The Bankruptcy Court deferred ruling on the motions to dismiss and instructed the parties not to file any further pleadings until disposition of the Motion to Abstain and Remand. Despite the Bankruptcy Court's directive not to file any more pleadings, Abby Lines filed a motion for leave to file an amended Complaint on December 29, 2003, and the Progressive Defendants filed a Motion for Withdrawal of Reference on January 27, 2004.

During a February 4, 2004 hearing, the Bankruptcy Court denied, with prejudice, the Motion to Abstain and Remand and issued an Order of same on March 5, 2004.

On February 17, 2004, the Trustee filed a Motion to Vacate the Interim Order Dated December 24, 2002. A hearing on the Motion to Vacate was set for April 7, 2004.

On April 5, 2004, while the Motion for Withdrawal of the Reference was pending before this Court, the Bankruptcy Court issued a Report and Recommendation "in an effort to identify all outstanding motions and issues pending before the Court." The Bankruptcy Court recommended, *inter alia*, that "the Motions to Dismiss the adversary proceeding as to the debtor and the Chapter 7 Trustee against all named defendants be granted, as debtor is bound by its agreement made on December 18, 2002," but that "the Simons, having alleged personal claims against the defendants, and not being bound by same said stipulation, should be allowed to proceed in state court with those claims."

---

[3] Sikes replaced E. Eugene Hastings, the previous Chapter 7 Trustee.

On April 5, 2004, the Bankruptcy Court also denied the Trustee's motion to vacate the December 24, 2002 Order and cancelled the hearing set for April 7, 2004.

On April 12, 2004, this Court adopted the reasoning of the Bankruptcy Court's April 5, 2004 Report and Recommendation, denied the Defendants' Motion for Withdrawal of Reference, and referred the adversarial proceeding back to the Bankruptcy Court.

On April 16, 2004, in conformance with its previous Report and Recommendation and the referral from this Court, the Bankruptcy Court issued an Order dismissing the adversary proceeding as to Abby Lines and the Trustee against all named Defendants on the basis of the release in the Agreed Order. The Bankruptcy Court ordered that the Simons' personal claims against the Defendants be remanded to State Court.

Also on April 16, 2004, the Trustee filed in a related proceeding, Civil No. 04-0495, a motion for reconsideration of this Court's April 12, 2004 Order and an objection to the Bankruptcy Court's April 5, 2004 Report and Recommendation.

On April 28, 2004, this Court issued a Memorandum Order, which, *inter alia*, denied the Trustee's motion for reconsideration, but

> direct[ed] the Bankruptcy Court to conduct an evidentiary hearing concerning all issues pertaining to debtors'[sic] release of claims and the December 24, 2002 Order. If the Bankruptcy Court changes its ruling concerning the release of claims, the Bankruptcy Court is further instructed to reconsider its ruling on any related matters in the case.

Pursuant to this Court's directive to reconsider the release of claims and the Agreed Order, the Bankruptcy Court permitted the parties to engage in additional discovery, conducted evidentiary hearings on August 30 and 31, 2004, and accepted additional briefing by the parties.

On November 2, 2004, the Bankruptcy Court issued an Order, which stated:

7

Pursuant to the Reasons for Decision issued this date,[4] the Motion to Reconsider is GRANTED in Part, allowing the release of Claims only as to lender liability claims of the debtor against the defendants, but that portion of the December 24, 2002 Order that release[d] defendants from any and all bankruptcy remedies is STRICKEN from the ORDER, and the Court RECOGNIZES the right of the Trustee to pursue any and all bankruptcy remedies, including a claim against the defendants for equitable subordination. Additionally, the Court AFFIRMS all other rulings made in the Order dated April 16, 2004, including the REMAND of the personal claims of the Simons against the defendants and the disposition of the Motion for Sanctions, and the Court SO ORDERS. To the extent any prior Order of this Court is inconsistent with the Reasons for Decision, such prior Order is annulled and vacated.

The Bankruptcy Court explained that "the various changes to the order between the December 18, 2002 hearing and the December 24, 2002 submission ultimately went 'too far'" by expanding the release to include bankruptcy remedies. The Bankruptcy Court stated that Progressive was guilty of "over reaching" in attempting to leverage the expanded release, but concluded that Abby Lines validly released its lender liability claims against Progressive on December 18, 2002.

On December 1, 2004, the Trustee timely filed an Appeal of the Bankruptcy Court's November 2, 2004 Order ("the Appeal") to this Court.

On December 22, 2004, the Trustee filed a Motion to Stay Proceeding and For Leave to Take Additional Discovery and Present Additional Evidence to Prove Unlawful Concealment of Crime ("Motion to Stay"). On January 12, 2005, and January 24, 2005, the Progressive Defendants and Doughty, respectively, filed memoranda in opposition to the Motion to Stay.

After several extensions, the Trustee filed her Appellant's Brief in regard to the Appeal on February 2, 2005. Doughty filed an Appellee's Brief on February 18, 2005, and the Progressive Defendants filed an Appellee's Brief on February 25, 2005.

---

[4]On November 9, 2004, the Bankruptcy Court amended its Reasons for Decision and Findings of Fact and Conclusions of Law, in relation to its November 2, 2004 Order, but its ruling did not change.

On June 2, 2005, this Court denied the Trustee's Motion to Stay.

With full briefing by all parties completed, the Court is now prepared to rule on the Appeal.

## II.    ISSUES ON APPEAL

The Trustee appeals the Bankruptcy Court's November 2, 2004 Order to the extent that the order allowed the release of lender liability claims against the Defendants. In summary form, the Trustee presents the following issues for review:

(1)    Are bankruptcy creditors entitled to receive substantive notice of any claim of the bankrupt to be released, and if so, was there sufficient notice in this case?

(2)    Were all Orders of the Bankruptcy Court properly signed and executed by the Bankruptcy Judge, and, if not, do these Orders satisfy due process?

(3)    Does the April 1, 2003 Order of the Bankruptcy Court preclude the release requested by Progressive?

(4)    Did Progressive prevent the Bankruptcy Court or this Court from receiving material information, and, if so, did this result in a denial of substantial justice?

(5)    Did Progressive illegally conceal suspected crime in an effort to be relieved of all claims, and, if so, is the bank "legally" entitled to such relief?

(6)    Did the Bankruptcy Court fail to make a proper inquiry and proper determination regarding whether releasing any claim against Progressive would be in the best interests of Abby Lines's creditors?

(7)    Was there a sufficient meeting of the minds for Abby Lines to have validly consented to release all claims against Progressive, and, if so, was such consent vitiated by fraud, error, or duress?

## III.    LAW AND ANALYSIS

### A.    Jurisdiction

The Court's jurisdiction to hear appeals from orders of the bankruptcy court is conferred by 28 U.S.C. § 158(a)(1), which provides in part that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees . . . . An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a).

**B.    Standard of Review**

A federal district court reviewing a bankruptcy court's decision acts as an appellate court and thus applies the same standard of review generally used by a federal court of appeals. *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992). The bankruptcy court's findings of fact are examined under the clearly erroneous standard. *In re Young*, 995 F.2d 547, 548 (5th Cir. 1993). Factual findings are reversed only if, based on all of the evidence, the court is left "with the definite and firm conviction that a mistake has been made." *Id.* The bankruptcy court's conclusions of law, as well as mixed questions of law and fact, are subject to de novo review. *In re Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

A bankruptcy court's denial of a motion to reconsider or denial of relief under Rule 60(b) of the Federal Rules of Civil Procedure is reviewed under an abuse of discretion standard. *In re Stangel*, 68 F.3d 857, 859 (5th Cir. 1995); *Williams v. Brown & Root, Inc.*, 828 F.2d 325, 328 (5th Cir. 1987). Similarly, bankruptcy decisions that are based upon equitable grounds are reviewed for abuse of discretion. *In re Coastal Plains*, 179 F.3d 197, 205 (5th Cir. 1999). A court "abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996).

**C.    Notice**

The Trustee argues that any release of claims against Progressive fails due to lack of proper legal notice to interested parties. The Trustee contends that "the 'official' notice filed of record is completely void of even a hint to any interested party of any substance of any claim which the bank wanted released," and thus "such 'notice' does not meet procedural due process requirements."

In *Mullane v. Central Hanover Bank & Trust Co.*, the Supreme Court set forth the minimum requirements for notice to satisfy procedural due process: "An elementary and fundamental

requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314 (1950). The notice must be of such nature as reasonably to convey the required information and it must afford a reasonable time and opportunity for those interested to make their appearance. *Id.*

Bankruptcy Rule 4001 requires additional specific notice requirements in a motion for approval of an agreement to use cash collateral: "Notice of the motion and the time within which objections may be filed and served on the debtor in possession or trustee shall be mailed to the parties on whom service is required [the creditors] . . . . Unless the court fixes a different time, objections may be filed within 15 days of the mailing of notice. . . . If no objection is filed, the court may enter an order approving or disapproving the agreement without conducting a hearing." Fed. R. Bankr. P. 4001(d).

As discussed above, during the hearing on final approval of the Agreed Order on January 15, 2003, the Bankruptcy Court discovered that the hearing had not been properly noticed. Thus, the Bankruptcy Court directed the parties to re-notice the hearing for April 2, 2003, with the hearing to be held "if and only if" objections were filed by March 6, 2003.

On February 17, 2003, Progressive served a Notice of Hearing ("Notice") on all creditors and parties in interest. The Notice, *inter alia*, stated that the Agreed Order "approved certain agreements between the Debtor and Progressive Bank" arising from the Emergency Motion by Abby Lines and that a final hearing on the Agreed Order was scheduled for April 2, 2003. The Notice explicitly advised that "any party opposing the Motion MUST file an objection . . . no later than March 6, 2003," and warned that "IF NO OBJECTIONS ARE FILED, NO HEARING WILL BE HELD AND THE AMENDED ORDER WILL BE MADE FINAL."

No objections to the Agreed Order or the release contained therein were filed by any party.

Nonetheless, the Trustee argues that the Notice was misleading because "[n]ot one word is mentioned in the body of the notice as to any intended release of any claim against Progressive

Bank." While the Trustee's statement is technically true, the argument is disingenuous, in that the entire 12-page Agreed Order, including the release, was *attached to* the Notice served on all parties in interest. Moreover, the Notice explicitly stated that "[a] copy of the [Agreed] Order is attached hereto, and a copy of the [Emergency] Motion is available upon written request to counsel for Progressive Bank."

As such, the Court finds that the creditors were afforded full and fair notice of the release, including notice of all relevant terms regarding the release and a reasonable time to object if desired. Thus, there was no violation of procedural due process or statutory authority under the bankruptcy rules, and the Trustee's appeal on this issue is DENIED.

### D.    Abuse of Process

The Trustee contends that Progressive is guilty of abuse of process in connection with the filing of the Initial Agreed Order and the Agreed Order in Bankruptcy Court. The Trustee argues that Progressive should not be permitted to "reap illicit benefits of using fake and forged court documents to provide the only 'notice' to innocent interested parties of any intended release of claim(s) against bank defendants."

The circumstances surrounding the signing and filing of both the Initial Agreed Order and the amended Agreed Order are rather unusual, but the Court finds no evidence that Progressive committed an "abuse of process," violated any law, or otherwise acted improperly regarding this issue. After the December 18, 2002 hearing on the Emergency Motion, counsel for all parties agreed to work together to memorialize the stipulations and proposed agreement in order to prepare an order for the Bankruptcy Court's signature. On December 23, 2002, the parties had agreed upon an order, but were unable to have the document signed by a bankruptcy judge due to the upcoming holiday. As Malcolm DeCelle, counsel for Abby Lines, explained in his deposition:

> Yeah, this was December 23, and we were in a cold sweat because TAB was demanding that we have an approved document. Judge Hunter had gone on vacation already. . . . And we were trying like crazy to sign the thing so that we could be funded, and I suppose that we had another copy that needed to be signed or something. Because what I did, I called Judge Calloway in Shreveport's law clerk, that's where we do most of our bankruptcy filings and so I felt comfortable calling him to see if he was available to sign the document because no

12

one else would sign it. . . . So Judge Calloway, when I talked to the clerk, he said–I explained everything, that we needed funding and it was soon to be Christmas Eve, he said he would try to track down Judge Calloway. . . . [H]e said, If you can get it to me, he would review it and consider signing it, the final order.

Decelle Depo., p. 20-21.

On December 24, 2002, DeCelle faxed a copy of the Initial Agreed Order to Judge Calloway's office. However, because Judge Calloway was not available to actually sign the document, he authorized his clerk to stamp his signature on the Initial Agreed Order, which was then filed into the record.

On December 26, 2002, DeCelle was made aware that there was an error in the Initial Agreed Order regarding the time of the final hearing on the Emergency Motion. On December 27, 2002, DeCelle typed "AMENDED" on the top of the signature-stamped Initial Agreed Order and changed the time of the hearing from 9:00 a.m. to 9:30 a.m. Then, without approval from the court or the other parties, DeCelle re-filed the document. Other than the change in the time of the hearing and the word "amended," the re-filed Agreed Order was identical to the Initial Agreed Order.

In the November 9, 2004 Amended Reasons for Decision, the Bankruptcy Court explained the circumstances surrounding the filing of these orders and concluded that DeCelle was responsible for any wrongdoing. The court determined that the Agreed Order was

> doctored by Mr. DeCelle after discovering he put the wrong time for the hearing in the original, already 'signed' Order. It was then entered in the record as an Amended order. All that Mr. DeCelle needed to do here was to re-notice the hearing. The Court reserves the right to sanction Mr. DeCelle for his role in the so-called "Amended Order" fiasco, or to refer the matter to the Judge whose facsimile stamp appears on the first order.

The Trustee now asserts that "the record contains not one shred of evidence to put the 'fiasco' at the feet of debtor's counsel" and that "the bankruptcy court was duped into believing that debtor's counsel should somehow be subjected to sanctions while the bank should somehow reap illicit benefits of using fake and forged court documents."

Considering the fact that DeCelle *admitted* to filing both the Initial Agreed Order and the amended Agreed Order under the circumstances described above, *see* DeCelle Depo., p. 20-21, 27-

28, this Court is hard-pressed to find the Bankruptcy Court's findings of fact on this issue to be clearly erroneous. Even assuming, *arguendo*, that Progressive was somehow liable for "the so-called 'Amended Order' fiasco," the Court notes that the changes between the Initial Agreed Order and the amended Agreed Order were immaterial to the issue of whether or not the creditors received notice of the proposed release and an opportunity to object. Thus, even if the Bankruptcy Court was incorrect in its findings, such error was harmless. As such, the Trustee's appeal on the issue of abuse of process is DENIED.

### E. Law of the Case

The Trustee argues that, under the law of the case, the Bankruptcy Court's April 1, 2003 Order, which denied approval of the Agreed Order as filed, should have precluded the Bankruptcy Court from later approving the release of claims against Progressive. Under the "law of the case" doctrine, "a court follows its prior final decisions in the case as the law of that case, except for a few narrow exceptions." *In re England*, 153 F.3d 232, 235 (5th Cir. 1998).

The Bankruptcy Court rejected the Trustee's argument, ruling that its April 1, 2003 denial of the Agreed Order "as filed" was not a final order on the release, but was simply a denial of the Agreed Order "based on the circumstances of the recent conversion" from a proceeding under Chapter 11 to one under Chapter 7. As the Bankruptcy Court stated in its Amended Reasons for Decision:

> The Trustee asserts that her position is somehow improved by this Court's actions of April 1, 2003, when this Court did not enter a final order approving the use of cash collateral. The inescapable fact is that the case had converted to a case under Chapter 7. There was no need for cash collateral, inasmuch as the business of the Chapter 11 debtor in possession had ceased as a matter of both fact and law. . . . [T]he evidence at the evidentiary hearings established that the business activities of the former debtors-in-possession effectively ended when the financial package contemplated by the December 2002 Order did not materialize.

As this is a mixed question of fact and law, this Court will review the issue de novo. "The law of the case doctrine provides that once a court of competent jurisdiction decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case."

*Copeland v. Merrill Lynch & Co, Inc.*, 47 F.3d 1415, 1423 (5th Cir. 1995); *see also Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816 (1988). This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues. *Id.* "The requirement under the 'law of the case' that a court follow earlier decisions in the same proceedings 'comprehends things *decided by necessary implication* as well as those decided explicitly.'" *Dickinson v. Auto Center Mfr. Co.*, 733 F.2d 1092, 1098 (5th Cir. 1983) (internal citations omitted) (emphasis in original).

This Court finds that the Bankruptcy Court's April 1, 2003 Order does not preclude a later approval of the release under the law of the case doctrine. First, the Bankruptcy Court did not explicitly deny the release in its April 1, 2003 Order. To the contrary, the Bankruptcy Court simply entered a handwritten order stating that the Agreed Order was "denied as filed. Any further relief to be noticed to the Trustee." It simply does not follow, as the Trustee implicitly argues, that the denial of a proposed order is a denial on the merits of every single term or agreement within that document.

Similarly, this Court is persuaded that a denial of the Agreed Order does not encompass a denial of the release of claims against Progressive "by necessary implication." The conversion of the case to a Chapter 7 bankruptcy proceeding, immediately before the Agreed Order was submitted for approval, fundamentally altered the nature of the case and effectively mooted the need for Abby Lines to obtain the relief sought in the Agreed Order. Thus, there was ample reason for the Bankruptcy Court to deny the Agreed Order "as filed" without consideration of the release contained therein.[5]

_____

[5]In fact, this Court finds that if there was any "law of the case" pertaining to the issue of the release of claims, it is that the release was *approved* on March 6, 2003–before the Bankruptcy Court denied the Agreed Order as filed. As noted previously, the Bankruptcy Court conditionally approved the stipulations contained in the Agreed Order, including the release at issue, on January 15, 2003. Final approval of these stipulations was subject only to proper notice to the interested parties and an opportunity to object within fifteen days. The Agreed Order was to become final if there were no objections to the entry of the proposed order. Thus, when no interested parties objected to the stipulations contained in the Agreed Order by March 6, 2003, the conditional approval became final and the issue of the release was at that time settled.

For the foregoing reasons, the Trustee's argument that the law of the case doctrine precludes approval of the release is DENIED.

### E.    Mistake and Fraud

The Trustee argues that any release of claims against Progressive fails due to error and fraud in the inducement of the release.  Specifically, the Trustee contends that the release should be set aside because Progressive "suppressed the truth, misrepresented same and remained silent and inactive regarding known 'irregularities' both investigated and documented in debtor's account." The Trustee further argues that Progressive did not tell Abby Lines and the Bankruptcy Court that two of its employees had been terminated for "ultra vires acts" in relation to Abby Lines's account and that Progressive had illegally concealed suspected crime.[6]  Finally, the Trustee asserts that "the 'key misrepresentation' which allowed the emergency release to go forward was that debtor's computers were somehow to blame for the 'problematic accounts.'"  Thus, the Trustee argues that the release contained in the Agreed Order was entered without consent by Abby Lines and should be set aside.

A challenge as to the validity of a court order based on fraud or mistake is cognizable under Rule 60(b) of the Federal Rules of Civil Procedure, which is made applicable to bankruptcy proceedings through Rule 9024 of the Federal Rules of Bankruptcy Procedure.  Rule 60(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . [or] (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

Fed. R. Civ. P. 60(b).

A party moving for relief under Rule 60(b)(3) must "establish by clear and convincing evidence (1) that the adverse party engaged in fraud or other misconduct and (2) that this

---

[6]The Trustee offers no evidence in support of its allegation of Progressive's criminal activities, only a conclusory statement that "the bank was failing to report suspected crime as required by law."

misconduct prevented the moving party from fully and fairly presenting his case." *Government Financial Serv. One Ltd. Partnership v. Peyton Place, Inc.*, 62 F.3d 767, 772 (5th Cir. 1995). The Fifth Circuit has repeatedly held that relief from judgment or order pursuant to Rule 60(b) is "considered an extraordinary remedy . . . [and t]he desire for a judicial process that is predictable mandates caution in reopening judgments." *In re Pettle*, No. 04-30611, 2005 WL 1163430, at *2, ___ F.3d ___ (5th Cir. May 18, 2005).

A rule 60(b) motion must first be made in the court which entered the judgment or order—here, the bankruptcy court. *See Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1213 (5th Cir. 1976). In the present case, the Bankruptcy Court conducted a Rule 60(b) hearing[7] on these issues pursuant to this Court's April 18, 2004 Memorandum Order, which "direct[ed] the Bankruptcy Court to conduct an evidentiary hearing concerning all issues pertaining to debtors'[sic] release of claims and the December 24, 2002 Order." The Bankruptcy Court allowed for additional discovery, conducted two days of evidentiary hearings, and accepted additional briefing by the parties on the issue of relief from the release contained in the previous Agreed Order. Then, having considered all the issues, the Bankruptcy Court issued an Order on November 2, 2004, granting in part and denying in part the motion to reconsider. The Bankruptcy Court granted relief from the previous orders by striking the previous release of all bankruptcy remedies. However, the

---

[7]The Bankruptcy Court and the parties proceeded as if they were participating in a Rule 60(b) hearing for relief from judgment. *See, e.g.*, Aug. 30 Tr., p 8 ("And that does accurately summarize the position of the Court, is that we are here pursuant, first, to the direction of the District Court and in a Rule 60(b) posture."); Tr. p. 7 (Plaintiff's attorney noting "the Court has made the position very clear that this is, essentially, a Rule 9024 or 60(b) motion."). However, the Bankruptcy Court's November 2, 2004 Order and Reasons for Judgment indicate he was ruling on a "Motion to Reconsider," which is typically decided under Rule 59(e) as a motion to alter or amend judgment. As the Fifth Circuit has stated, "[a]lthough motions for reconsideration or rehearing are typically treated as Fed. R. Civ. P. 59(e) motions, motions for reconsideration or rehearing served more than 10 days after the judgment are generally decided under Red. R. Civ. P. 60(b)." *Stangel*, 68 F.3d at 859. A denial of the requested relief under either Rule, however, is reviewable under the same abuse of discretion standard. *Id.*

17

Bankruptcy Court denied all other relief sought by the Trustee by affirming the release as to all lender liability claims.

A bankruptcy court's denial of a motion to reconsider or denial of relief under Rule 60(b) is reviewed for an abuse of discretion. *Stangel*, 68 F.3d at 859. "It is not enough that the granting of relief might have been permissible, or even warranted–denial must have been so unwarranted as to constitute an abuse of discretion." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

The Court concludes that the Bankruptcy Court did not abuse its discretion in denying the Trustee relief based on fraud or mistake. First, the testimony and exhibits presented at the August 2004 evidentiary hearing established that Abby Lines had full knowledge of the "irregularities" in their accounts before the December 18, 2002 hearing at which Abby Lines initially agreed to the release. For example, at the evidentiary hearing on August 30, 2004, Mr. Simon, one of the two shareholders of Abby Lines, unambiguously stated that prior to December 18, 2002, he was aware of and had documented proof that Progressive had been mishandling Abby Lines's accounts. *See, e.g.*, Aug. 30, 2004 Tr., pp. 107-119. As such, the Trustee cannot now establish that Abby Lines was fraudulently induced into signing the release because of Progressive's alleged silence regarding irregularities in the accounts.

Second, it was Abby Lines's own counsel who first indicated that Abby Lines's computers may have been to blame for the problematic accounts. *See* Fontenot Letter to Progressive, December 12, 2002 ("As I told you, there is a very good explanation for the 'duplicate' invoice issue. A computer upgrade at [Abby Lines] resulted in the loss of information on a number of invoices."). Additionally, the evidence shows that, in late October or early November, 2002, Abby Lines was made aware that TAB, in conducting its due diligence accounting, had concluded that the problems related to the missing and duplicate invoices may not have arisen from Abby Lines's computers. *See, e.g.*, Valdez depo., pp. 45-81.

Third, Eddie Simon testified that, prior to the release, Abby Lines was aware that two Progressive employees who had previously handled their account had been terminated. *See* Aug. 30, 2004 Tr. pp. 46-47. In response, however, the Trustee argues that "neither debtor, nor the bankruptcy court were allowed to understand during the emergency (prior to any release) that such employees had handled debtor's account so far beyond the course and scope of their respective employment duties." The Bankruptcy Court considered this issue and concluded that "[t]he bank's representatives and counsel were not forthcoming in communicating this important fact to the Court." Nonetheless, the Bankruptcy Court did not consider this omission of facts to be sufficiently fraudulent as to set aside the release. This Court is in agreement. The Trustee has not demonstrated how such an omission rises to the level of fraud nor how Abby Lines's alleged ignorance prevented the parties from validly entering into the release or from presenting their case as to the same.

The Court finds that the Trustee has not proven that Abby Lines was mistaken as to any material fact regarding the release or was otherwise the victim of fraud. Moreover, assuming *arguendo* that there was misconduct on the part of Progressive in this regard, Abby Lines was aware of these issues before it agreed to the release. Finally, the Trustee's allegations, even if true, do not present the type of "extraordinary circumstances" that would warrant relief under Rule 60(b). As such, the Trustee has not proven by clear and convincing evidence that any mistake by Abby Lines or alleged fraud by Progressive prevented Abby Lines from fully and fairly presenting its case as to the release. This Court therefore concludes that the Bankruptcy Court did not abuse its discretion in denying Rule 60(b) relief to the Trustee. The Trustee's appeal on the issue of fraud and mistake is DENIED.

## F.   Duress

The Trustee also contends that the release should be invalidated on the basis of duress. The Trustee states that "Progressive Bank applied wrongful, if not unlawful pressure, for no other reason

than to first force debtor into an unnecessary bankruptcy, and second, to leverage a release in favor of bank persons responsible for those misrepresenting critical facts and failing to report fraud, if not crime in debtor's account."

The Court finds the Trustee's argument to be without merit. "A threat of doing a lawful act or a threat of exercising a right does not constitute duress." LA. CIV. CODE ANN. art. 1962 (1987); *see also Gooding v. Millet*, 517 So.2d 396, 397 (La. App. 5 Cir. 1987). Here, Progressive ceased funding to Abby Lines under the Factoring Agreement only after Progressive discovered that Abby Lines had been concealing a tax liability in excess of $3 million. Default for breach of Abby Lines's warranty that all receivables were "free and clear of all security interests, liens, and claims whatsoever of third parties" was expressly anticipated under the terms of the Factoring Agreement. Therefore, Progressive's exercise of its lawful right of termination does not give rise to a claim of duress.

"Furthermore, Louisiana law clearly provides that a claim of financial straits does not constitute duress." *Aubert v. Entergy Corp.*, 762 So.2d 288, 291 (La. App. 5 Cir. 2000); *see also Shepherd v. Allstate Ins. Co.*, 562 So.2d 1099, 1101 (La. App 4 Cir. 1990) ("Duress which will invalidate a release from liability or compromise of claims for injuries is that which proceeds from fear or force of violence. The claim of financial straits does not give rise to duress."). The fact that Abby Lines was facing bankruptcy or other financial pressure does not alone vitiate their consent to the release. Accordingly, the Trustee's appeal on the basis of duress is DENIED.

### G. Consideration[8]

The Trustee also argues that the release should be voided because there was a lack of consideration for the release and because any consideration that was given failed.

"Failure of consideration is defined as consideration which originally existed which was not

---

[8]Although this issue was not designated in the issues presented for appeal, it was thoroughly briefed by all parties in their appellate briefs and it was presented to the Bankruptcy Court. Therefore, in the interest of judicial economy, this Court will address the issue presently.

performed or which failed thereafter–as opposed to want or lack of consideration, which is no consideration at the time." *Progressive Bank v. Stutts*, 516 So.2d 1207, 1208 (La. App. 2 Cir. 1987).

First, the Trustee asserts that "Progressive Bank did not give up one thing in consideration for the release of all claims against the bank." Specifically, the Trustee argues that there was no security interest for Progressive to relinquish because such security interest only came into existence when the bank actually funded the invoices, which Progressive refused to do after it terminated the Factoring Agreement on December 4, 2002.

The Court finds this argument to be without merit. Contrary to the Trustee's assertion, Progressive possessed a security interest in all of Abby Lines's accounts. Moreover, evidence of the proper perfection of the security agreements, as well as Progressive's first lien position, was admitted into evidence before the Bankruptcy Court without objection. Following the hearing on the Emergency Motion, Progressive agreed to release its security interest in up to $250,000 of the pre-petition accounts so that Abby Lines could sell those accounts to TAB in an effort to continue Abby Lines's business operations. Thus, the Court finds that the release was supported by valid consideration.

The Trustee next argues that the "true consideration intended by the parties," that of allowing Abby Lines's CPA full access to Progressive's audit of Abby Lines's account "in order to resolve any disputes that are existing (both) as to the amount owed and what happened to the problematic accounts," failed when Progressive withheld information from the CPA.

The Court finds this argument to also be without merit. There is no evidence that this was the "true consideration" intended by the parties any more so than Progressive's release of the secured accounts. This allegation also lacks a factual basis. Roland Perry, Abby Lines's CPA, stated at his deposition on July 14, 2004, that Abby Lines provided him "everything he asked for" and that he was able to view any and all of Abby Lines's records maintained by the bank. *See* Perry

21

Depo., pp. 18, 25-26, 34-37. The Trustee's argument that the release fails for lack or failure of consideration is DENIED.

### H. Judicial Approval of the Release

The Trustee argues that the Bankruptcy Court should have invalidated the release because it was not in the best interest of the creditors. Specifically, the Trustee asserts that, "[i]n order to release all claims against Progressive in the case at bar, the bankruptcy court must find such consent decree is fair, adequate and reasonable to all concerned," but "the bankruptcy court failed to make such required determination, let alone address same in its written decisions." The Trustee relies on several cases requiring such an analysis, including the Fifth Circuit's decision in *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980).

In *Jackson Brewing*, the Fifth Circuit held that in order to assure a compromise of claims arising in bankruptcy reorganization, a bankruptcy judge "must evaluate and set forth in a comprehensible fashion: (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) The complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and (3) All other factors bearing on the wisdom of the compromise." 624 F.2d at 602. In *In re Aweco Inc.*, the Fifth Circuit explained that "[w]th regard to approval of compromises that form part of a plan of reorganization, an even more definite rule limits the exercise of discretion. A court may approve such a compromise or settlement only when it is 'fair and equitable.'" 725 F.2d 293, 298 (5th Cir. 1984) (citing *Jackson Brewing*, 624 F.2d at 602).

Thus, it is clear that a bankruptcy court is required to apply the three-part *Jackson Brewing* test to a proposed settlement or compromise of an ongoing dispute or litigation involving reorganization. However, the Bankruptcy Court explained that it was "not aware of binding authority that applies the test to Court approval of a waiver of lender liability claims in the context

22

of a preliminary hearing on the use of cash collateral, nor do the parties provide such citation." This Court likewise has found no such authority, binding or otherwise, which applies–much less mandates–the application of such a test to the above-described situation, nor has the Trustee cited any such authority. Having conducted a de novo review of this issue, this Court determines that the Bankruptcy Court did not err in not applying the *Jackson Brewing* test in the context of approving a release in a cash collateral order. The Trustee's appeal on this issue is DENIED.

### I.    Meeting of the Minds

Finally, the Trustee argues that the parties did not reach a meeting of the minds regarding the scope of the claims or the parties to be released. Specifically, the Trustee contends that "there was absolutely no agreement to release either bank employees or directors" and "absolutely no mention, discussion, negotiation, consent, intent and/or agreement to release any claim for fraud, intentional tort or breach of fiduciary duty." Further, the Trustee asserts that even if there was a valid consent to release all claims at the time, this agreement should be rescinded because "the bank intentionally hid ultra vires acts (not to mention the results of the bank's investigation) so as to falsely represent to the court that debtors' [sic] computers were somehow responsible for the 'problems.'"

In its November 9, 2004 Amended Reasons for Decisions, the Bankruptcy Court carefully considered the scope of the release and the parties' intentions in entering into the release, both during the December 18, 2002 hearing on the Emergency Motion and as evidenced in the Agreed Order. The Bankruptcy Court noted that Progressive "held all the cards" in leveraging an expansion of both the definition of lender liability and to whom the release would apply, but ultimately held that Abby Lines had voluntarily and knowingly released all lender liability claims against Progressive. The Bankruptcy Court did eliminate the release of the bankruptcy claims, specifically noting that the release did not preclude the Trustee's right to pursue claim of equitable

23

subordination. The Bankruptcy Court also noted that the Simons' personal claims were not bound by the stipulations. However, the Bankruptcy Court otherwise found the release to be proper and appropriate, thus rejecting the Trustee's argument that there was no meeting of the minds and that Abby Lines had not knowingly consented to the release of the lender liability claims.

As the intention of the parties in entering into an agreement or contract is an issue of fact particularly suitable for determination by the trier of fact, an appellate court will review the trial court's decision for clear error. *See National Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990); *Mumblow v. Monroe Broadcasting, Inc.*, 401 F.3d 616, 621-22 (5th Cir. 2005). Having reviewed the record, including the transcripts and exhibits relating to the release, this Court cannot say that the Bankruptcy Court erred in finding that the parties had a meeting of the minds in relation to the release of the lender liability claims.

Moreover, this Court notes that the Trustee's arguments regarding the scope of the release is misplaced. Abby Lines agreed at both the December 18, 2002 hearing on the Emergency Motion and in the agreed order that "no claims will be asserted in the nature of lender liability claims." The Trustee now asserts that there was no meeting of the minds on any waiver of claims under tort or contract liability. However, the term "lender liability" is a general term which covers a vast array of potential causes against lenders. As one court has explained, "Lender liability is not an independent cause of action, but a term that refers to the imposition of traditional contract or tort liability on a bank or other financial institution. It may be predicated on, *inter alia,* breach of contract, breach of fiduciary duty, common law fraud, duress, tortious interference with contract, defamation or negligence." *Carry Oil Co., Inc. v. MG Refining and Marketing, Inc.*, 90 F.Supp. 2d 401, 418 (S.D.N.Y.) (citing Melvin L. Cantor, John J. Kerr, Jr., and Thomas C. Rice, *Lender Liability Theories, in* LENDER LIABILITY LITIGATION: RECENT DEVELOPMENTS, at 74 (PLI Commercial Law and Practice Course Handbook Series No. 434, 1987); HELEN DAVIS CHAITMAN, THE LAW OF LENDER LIABILITY, 5.02- 5.09, 5-3-5-67 (1990)). Thus, the Court

finds that there was a meeting of the minds regarding Abby Lines's release of all lender liability claims, including those arising under tort law and contract.

Additionally, the Trustee has presented no competent evidence to support its argument that Abby Lines never intended to release either bank employees or directors, despite the explicit language in the Agreed Order that "Debtor, for itself and assigns, including any subsequently appointed Trustee, agrees that it will assert no claims against [Progressive] Bank or Bank's employees or directors." The Trustee simply makes conclusory allegations that have already been rejected by the Bankruptcy Court.

Finally, for the reasons already discussed above, the Court finds that there is no merit in the Trustee's argument that the release should be rescinded because Progressive "intentionally hid ultra vires acts," prevented Abby Lines from learning of the bank's internal investigations, or "falsely represent[ed] to the court that debtors' [sic] computers were somehow responsible."

The Trustee's argument that there was no enforceable agreement because there was no "meeting of the minds" or, alternatively, that any release should be rescinded for error or fraud is DENIED.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's November 2, 2004 Order is AFFIRMED, and the Trustee's Appeal [Doc. No. 1] is DENIED.

MONROE, LOUISIANA, this ___24___ day of ___June___, 2005.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

25